UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STUART R. ROSS,                                 :
                                                :
        Plaintiff,                              :      09 Civ. 8666 (HB)
                                                :
        -against-                              :      OPINION & ORDER
                                                :
DAVID BLITZER, JOHN DOE,                        :
PETER POE and RICHARD ROE,                      :
                                                :
        Defendants.                             :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

      Plaintiff Stuart R. Ross ("Ross" or "Plaintiff") filed his Complaint in this action on October 13, 2009 alleging intentional infliction of emotional distress against Defendant David Blitzer ("Blitzer" or "Defendant") and against certain John Doe Defendants for "aiding and abetting" Blitzer in the commission of his alleged wrongful acts. Blitzer has moved to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ross did not submit any substantive response to the motion to dismiss; rather, he filed a cross-motion to disqualify Blitzer's counsel and to strike the motion to dismiss. Because I have received no substantive response to the motion to dismiss, I will reserve decision on that motion for the time being, and this opinion will address only the cross-motion to disqualify counsel. For the reasons set forth below, Plaintiff's cross-motion is denied. As set forth this case shall be placed on my suspense docket for forty-five (45) days from the date of this order, with the opportunity to seek an additional fifteen (15) days of suspension if needed and if reasons are provided.

## I.  FACTUAL BACKGROUND[1]

      In approximately 2008, after having struggled for several years with a serious illness, Ross began to seek financial support from Blitzer, his son-in-law. During the several years prior to 2008, Ross had little contact with Blitzer or his wife (Ross's daughter) and had not been permitted any contact with their children (Ross's grandchildren). Ross alleges that in mid-2008, Blitzer committed to loan Ross $100,000 to help Ross finance and finalize a business venture. By July 2008, Blitzer had already provided $50,000, and Ross contacted Blitzer to collect the balance. Blitzer, however, allegedly reneged on his commitment to provide the balance. Ross alleges that

---

[1] For purposes of this opinion only, the account of the facts is taken from the Complaint and the Affidavit of Stuart R. Ross ("Ross Aff."), submitted in support of the disqualification motion.

"Blitzer's refusal upset [him]" and that he explained to Blitzer that he desperately needed the money, but Blitzer did not budge. During the same timeframe, Ross sought Blitzer's permission to visit with his grandchildren, but Blitzer denied these requests as well.

In July and August 2008, Ross contacted Blitzer by telephone to urge him to reconsider his positions on both the financial support and visitation. Ross admits that he is an alcoholic and that he was inebriated during these telephone calls, but he denies that he ever made any threat of physical harm to Blitzer or his family. Nevertheless, Blitzer held fast to his refusal to provide more money or visitation to Ross. Ross alleges that Blitzer was angered by Ross's repeated pleas, and decided to "take advantage of Ross at the moment when Ross was at this very low level." Ross alleges that Blitzer did so by contacting the District Attorney's Office of New York County to bring charges for extortion based on Ross's allegedly harassing telephone calls.

Blitzer, through his attorney, also arranged an in-person meeting with Ross purportedly to discuss a resolution of their issues. Ross alleges that, through his attorneys, Blitzer advised Ross that he was willing to make a monetary payment, but in exchange Ross would be required to relinquish any rights to visit his grandchildren and to waive any claims to receive any further loans or advances from Blitzer. However, Ross alleges that settlement of their issues was not Blitzer's true intention in calling the meeting; rather, Ross alleges that Blitzer's true intent was to "entrap" Ross. The meeting took place in August 2008 and was attended by Ross and Blitzer and both parties' attorneys, including Roger Stavis on behalf of Blitzer. Once again, Blitzer allegedly offered to pay Ross a sum of money in exchange for his abandonment of his requests for further money or visitation with the children. Unbeknownst to Ross, the meeting was videotaped and a copy of the tape was provided to the District Attorney's Office. Subsequently, the District Attorney obtained an indictment from the grand jury against Ross for extortion.

## II. DISCUSSION

Ross's instant motion to disqualify Roger Stavis and his law firm, Gallet Dreyer & Berkey LLP, is premised on his contention that Stavis is the key non-party witness who actively participated and facilitated Blitzer's alleged misconduct in this case. Specifically, Ross contends that it was Stavis who first initiated contact with respect to settlement of the dispute between Ross and Blitzer and Stavis allegedly worked with Blitzer and encouraged Ross to request money during the August 2008 meeting and then portrayed that request to the District Attorney as

attempted extortion. Indeed, Ross alleges that it was Stavis, not Blitzer, who was in contact with the District Attorney during the relevant timeframe.

**A.     Legal Standard**

Rule 3.7 of the New York Rules of Professional Conduct – former Disciplinary Rule 5-102 ("DR 5-102") – pertains to situations in which lawyers may be called as witnesses, commonly referred to as the "witness-advocate rule."[2] Under this rule "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact," except in certain enumerated circumstances. N.Y. C.R.R. § 1200.29. New York courts have interpreted this provision to require disqualification "only when it is likely that the testimony to be given by the witness is necessary." *Gabayzadeh*, 639 F. Supp. 2d at 303 (quoting *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445-46 (1987)).

As the Second Circuit recently found, "Rule 3.7 lends itself to opportunistic abuse." *Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). The court further found that "[b]ecause courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny, particularly motions under the witness-advocate rule." *Id.* (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)) (internal quotation marks omitted). Thus, to succeed on a motion to disqualify based on the witness-advocate rule, Ross must show "specifically how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial." *Lamborn*, 873 F.2d at 531. "Prejudice" in this context means "testimony that is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Murray*, 583 F.3d at 178.[3] Thus, the Second Circuit

---

[2] Ross's motion for disqualification repeatedly references former DR 5-102 as the basis for disqualification in this case. However, effective April 1, 2009, the New York courts adopted the New York Rules of Professional Conduct, in which the witness-advocate rule is set forth in Rule 3.7. *See* 22 N.Y.C.R.R. § 1200, *et seq.* Since the enactment of the new Rules, several courts have found that the new Rule 3.7 is essentially identical to former DR 5-102, and have applied pre-enactment cases under the former rule to analyze cases that arise under the new Rule. *See, e.g.*, *Capponi v. Murphy*, 08 Civ. 4449 (VM), 2009 U.S. Dist. LEXIS 83774, at *28-30 (S.D.N.Y. Sept. 11, 2009); *Gabayzadeh v. Taylor*, 639 F. Supp. 2d 298, 303 & n.5 (E.D.N.Y. 2009).

[3] The Second Circuit has identified four risks that Rule 3.7 is designed to alleviate:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

has held that disqualification under Rule 3.7(b), which applies to Ross's motion, is appropriate "only if the movant proves by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Id.* at 178-79; *see also Gormin v. Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) ("The party seeking disqualification must bear a heavy burden of proof in order to prevail and mere speculation will not suffice.").

Thus, it is clear that "the disqualification of an attorney upon the motion of an adversary is a serious sanction that ought not be imposed lightly." *Sea Tow Int'l, Inc. v. Pontin*, No. CV-06-3461, 2007 WL 4180679, at *1 (E.D.N.Y. Nov. 19, 2007); *see also Capponi*, 2009 U.S. Dist. LEXIS 83774 at *29 ("Because disqualification impinges on a party's right to select counsel of its choosing, it is considered a drastic remedy."). Indeed, it is well-established that "[m]otions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." *Gabayzadeh*, 639 F. Supp. 2d at 300 (quoting *Bennett Silvershein Assoc. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991)); *see also Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586 (LAK) (GWG), 2009 WL 3069740, at *1 (S.D.N.Y. Sept. 28, 2009); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 662-63 (S.D.N.Y. 2001); *cf. Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980) (instructing district courts to take a "restrained approach" when deciding motions to disqualify counsel). Thus, in deciding a motion to disqualify counsel, the Court must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

**B.     Disqualification is Unwarranted at this Stage**

In making the instant motion to disqualify Stavis and his law firm, Ross conclusorily states that Stavis's testimony will be adverse to Blitzer because it will show that Blitzer "carefully plotted with Stavis and acted with intent to cause emotional and mental harm to the Plaintiff." However, at least at this very preliminary stage of the litigation, there is nothing in the record before the Court to suggest that any potential testimony that Stavis might give wouldn't be precisely aligned with Blitzer's interests.[4] Moreover, although Ross contends that "if it appears

---

*Id.* (citing *Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282-83 (2d Cir. 2004)).

[4] Ross also argues that Stavis having revealed the terms of a confidential letter that contained settlement negotiations somehow shows that he is "so personally immersed in this case as a participant that he had lost all reasonable

4

that an attorney may be a witness, the time to decline representation is at the start of the suit," the standard set forth above makes it clear that the witness-advocate rule is concerned with preventing potential taint *at trial*. Thus, where there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature. *E.g.*, *Gabayzadeh*, 639 F. Supp. 2d at 304 (denying motion to disqualify where determination "would be merely speculative at this point" in litigation); *Gormin*, 2009 WL 508269 at *3 ("The reality is that at this stage of the litigation, it is impossible to determine how significant [defendants' counsel] might be as a witness or whether he is likely even to be called as a witness; whether his testimony would likely hurt or help his client; or whether his testimony would or would not be cumulative of other witnesses. Based on such a record, courts in this District commonly deny disqualification motions.") (collecting cases); *Lyman v. City of Albany*, No. 06-CV-1109 (LEK/DRH), 2007 WL 496454, at *4 (N.D.N.Y. Feb. 12, 2007) ("[A]t this stage, the scope of Lyman's claims which will remain at issue for trial has not been resolved nor have the factual issues which will be in dispute at [trial]. Absent such determinations, it would require undue speculation to determine whether issues will remain for trial as to which [counsel] ought to testify.").

Here, where the Court has only this week held a Rule 16 conference, but has entered no pretrial scheduling order, and where there has been no discovery as of yet, there is no record on which to base a determination that disqualification is proper.[5] *See, e.g.*, *A.V. by Versace*, 160 F. Supp. 2d at 664 ("[W]hen, as here, it is not clear, prior to the completion of discovery, whether the moving party sustained its burden of showing that the attorney would be called as a witness, the motion to disqualify is premature and should be denied.") (quoting *Abdullah v. Sheridan Sq. Press, Inc.*, 93 Civ. 2515 (HB), 1995 U.S. Dist. LEXIS 9679, at *3 (S.D.N.Y. July 12, 1995)); *Papyrus Tech. Corp. v. New York Stock Exch.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004) (noting that a court "must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel"). In other words, it is too early at this juncture to make a

---

perspective of his ethical role as an attorney." While the Court expresses no opinion on the propriety of Stavis's disclosure of the contents of the settlement letter, it is difficult to see how this conduct is related in any way to his disqualification under the witness-advocate rule.

[5] Indeed, numerous courts in this district have expressly permitted attorneys who were potential witnesses at trial to continue their representation of their clients throughout the pretrial proceedings, including discovery and dispositive motions. *See, e.g.*, *Lyman*, 2007 WL 496454 at *4; *A.V. by Versace*, 160 F. Supp. 2d at 665 (collecting cases); *Conigliaro v. Horace Mann School*, No. 95 Civ. 3555 (CSH), 1997 WL 189058, at *4 (S.D.N.Y. Apr. 17, 1997).

determination with any certainty that Ross has borne his high burden to show that Stavis's testimony will be necessary at trial or that the content of that testimony is likely to be prejudicial to Blitzer. Indeed, this case might never proceed to trial for any number of reasons, not the least of which is Blitzer's pending motion to dismiss.[6] Accordingly, Ross's motion to disqualify Blitzer's counsel must be denied at this stage in the proceedings, without prejudice to potentially being brought again at a more appropriate time, should the case not be dismissed.[7]

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion to disqualify Blitzer's counsel is denied without prejudice. Based on the representations by Plaintiff's counsel at the Rule 16 conference regarding Plaintiff's condition, this action will be placed on the suspense docket for a period of forty-five (45) days from the date hereof. Plaintiff may apply to extend the suspension of the matter for an additional fifteen (15) days for good cause shown. In any event, if neither party advises the Court before that time that Defendant is ready and able to proceed with this action, it will be dismissed for failure to prosecute. If, however, Plaintiff writes the Court to advise that he is prepared to proceed, then his substantive response to the pending motion to dismiss shall be served and filed not more than twenty (20) days after any such communication, and Defendant's reply, if any, shall be submitted five (5) business days after service of Plaintiff's opposition.

IT IS SO ORDERED.
New York, New York
December 21, 2009

_____
U.S.D.J.

---

[6] Additionally, the Court must acknowledge the familiar notion that it has the discretion to stay a civil proceeding pending the outcome of a parallel criminal case when the interests of justice so require. *See United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) (holding that although "the Constitution . . . does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. . . a court may decide in its discretion to stay civil proceedings"). To determine whether such a stay is appropriate, a court must consider several factors and balance the interests of the litigants, non-parties and the court itself. *See, e.g., Motorola, Inc. v. Abeckaser*, 07-CV-3963 (CPS) (SMG), 2009 U.S. Dist. LEXIS 24855, at *3-4 (E.D.N.Y. Mar. 26, 2009) (quoting *Hicks v. City of N.Y.*, 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003)); *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6, 8 (D. Conn. 2002) (citing *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). Although no party has moved for a stay of this action pending the outcome of Ross's criminal proceeding, and thus the Court need not squarely address these issues, it is worth noting that this is yet another possible reason why this case might not proceed to trial, at least not in the near future.

[7] Blitzer's cross-motion also asserts that, in the event the motion to disqualify is granted, then the motion to dismiss, as well as the Stavis Affidavit submitted in support of the motion, should be stricken. Because the Court has denied the disqualification motion, the concomitant motion to strike is also denied.